## FRANKIE EVANS *v.* STATE OF MARYLAND

[No. 437, September Term, 1970.]

*Decided March 17, 1971.*

452

The cause was submitted to MURPHY, C.J., and ANDERSON and ORTH, JJ.

*Roland Walker*, with whom was *Richard S. Kahn* on the brief, for appellant.

*James L. Bundy, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City*, and

*Joseph Harlan, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

On 6 January 1970 about 4:15 P.M. Officer Theodore Brown of the Baltimore City Police Department was patrolling the area of Caroline Street and Ashland Avenue in a marked radio car. An unknown citizen, "male, negro, 23 years of age", ran up to the car. "He was very shook up. All he kept saying, 'I was just assaulted and robbed.' I tried to calm him down." The man said he had been robbed in the 900 block Caroline Street. "[T]he person put a gun to his head and took some money from him. * * * He stated that the person assaulted and robbed him was in a 1967 Buick, red and black in color, and that the car was proceeding south on Caroline." The officer told the man to get in the radio car and drove south on Caroline St. The officer put the complaint and the information received over the air. "The traffic was heavy and as we approached the 300 block Caroline, the person in the car pointed out a 1967 Buick, red bottom, AG5493. Two persons in the car and the man in my car said, 'That's the man in that car there in the Buick that assaulted and robbed me.' " He indicated it was the man on the passenger side. "The car was stopped in traffic in the 300 block Caroline. I was about three cars behind. At this point my complainant got excited, said, 'I don't want to be around.' I said, 'Stay in the radio car.' I jumped out of the car, pulled my revolver, went up to this car. Two persons were in it. I held them at gun point until assistance arrived." The man in the passenger's seat was Frankie Evans. As Brown approached the car he noticed Evans "was fooling around under the seat on his side of the car. I immediately told the driver to turn the car off and he handed me the keys." The officer described Evans' actions in more detail. "He was forward like this, as if shoving something under [the seat]." When assistance arrived in a short time complainant had

disappeared. The men in the car were searched. Twelve glassine bags containing a white powder, a bottle cap with a handle on it and a burned bottom, a hypodermic needle, two needles, two syringes and twenty-one 22-short caliber bullets were found on Evans' person. As Evans got out of the car, Brown saw a silver plated revolver partially under the seat on his side of the car. It was .22 caliber and fully loaded with six rounds. On analysis the white powder in the bags proved to be heroin.

Evans was charged with possessing heroin and narcotic paraphernalia and with carrying a deadly weapon concealed upon his person. At a bench trial in the Criminal Court of Baltimore he was convicted of those offenses. At the trial he moved to suppress the evidence on the ground that it was obtained by a search and seizure which was unreasonable because incident to an illegal arrest. After the State adduced evidence on the issue as summarized above, he testified for the limited purpose of the motion. He said that he had seen a Charles Moore earlier that day. "I went up on Gay and Caroline Street, get some narcotics. So, I saw him serve someone else, sell, you know, someone else narcotics and before I got up to him, when he was getting ready to walk away he dropped something. I picked it up. He turned, seen me picking it up and he asked me for it back and I refused. I did not give it to him. He told me he would get even with me. About ten minutes later this is when the Police arrived and arrested us. He said this man told him he had just been assaulted and robbed." At the time the officer approached him he saw Moore walking away. "He was the only one there." What Moore had dropped were 8 or 9 $5 packets of heroin bound by a rubber band. Evans had sought Moore out to make a "cop" — purchase heroin from him. He did not know Moore's address. He described him as a colored male, about 21 or 22 years old, 5 feet 3 inches tall. Evans was 6 feet 2½ inches in height. On cross-examination Evans said Moore asked him to give the decks of heroin back several times and attempted

to grab them. He did not give them back because most of the time what he had bought from him before was bad.

The lower court held that the arrest was legal. We share its view of the matter. "A police officer may arrest a person without a warrant if he has probable cause to believe that a felony has been committed or attempted and that such person has committed or attempted to commit a felony whether or not in his presence or view." Code, Art. 27, § 594B (c). We observed in *Wescott v. State,* 11 Md. App. 305 that probable cause within the contemplation of the statute has the same meaning it had under the common law rules of arrest without a warrant long followed in this jurisdiction, citing *Rife v. State,* 9 Md. App. 658 at 663. Its definition under those rules was fully discussed in *Cleveland v. State,* 8 Md. App. 204. And see *Boddie and Brooks v. State,* 6 Md. App. 523; *Simms v. State,* 4 Md. App. 160.

It is settled that the legality of a warrantless arrest is measured by the existence of probable cause at the time of the arrest. *Mullaney v. State,* 5 Md. App. 248. Thus the question is whether the facts and circumstances within Officer Brown's knowledge, or of which he had reasonably trustworthy information, were sufficient to warrant a reasonably cautious person in believing that a felony had been committed by appellant. The information he had was from a man who said he had just been robbed nearby and that the robber was departing the scene in a certain direction in a specifically described automobile. The facts and circumstances within his knowledge were that he saw the described automobile shortly thereafter near the scene proceeding in the direction indicated by the victim. At that point the victim pointed out a man seated in the automobile as the robber. It was appellant. Of course, as we have repeatedly and emphatically stated, information upon which the police acted, even if hearsay as adduced in court, is directly relevant and admissible on the issue of the lawfulness of an arrest. *Winebrenner v. State,* 6 Md. App. 440, 443. It is clear that 'if the information here was "reasonably

trustworthy" a reasonably cautious person would be warranted in believing that a felony had been committed by Evans. Our inquiry turns to whether it may be deemed reasonably trustworthy.

The general rule was set out in *Bolesta v. State,* 9 Md. App. 408, 412:

> "Where the arrest is initiated on hearsay information received from an informant, the State to establish its legality where challenged should sufficiently inform the trial judge of some of the underlying circumstances from which the informant concluded that a crime was being or had been committed by the person to be arrested, and some of the underlying circumstances from which the police concluded that the informant was credible or his information reliable. * * * It is not necessary in all cases, however, that the basis of the informer's conclusion that the accused was committing a crime be shown to establish the legality of the arrest. Where, * * * the arrest is initiated on hearsay information received from an informant whose reliability is established on the record, the fact that the underlying basis for the informer's conclusion that the accused was committing a crime is not shown does not render the arrest illegal, so long as the arresting officer, by his own observations, is able to corroborate the substance of the informer's information, thus providing a substantial independent basis for crediting the hearsay. But under this test, as with the other, the reliability of the informer must be shown on the record; it cannot be established solely by reason of the fact that when the informer's information was acted upon it proved accurate." [1]

---

1. It is patent that in setting out the rule "informant" and "informer" were used interchangeably and within the broad general meaning of one who gives information. For a classification of "informers" see *Nutter v. State,* 8 Md. App. 635, 637, note 1.

We have held that a report of a felony and a description of the perpetrators broadcast over a police radio may furnish probable cause for an arrest, it not being essential that the arresting officer himself have probable cause for the arrest, where information collectively within the knowledge of the police comprises probable cause and the arresting officer has been alerted over the police radio to make the arrest. *Sands v. State,* 9 Md. App. 71, 76. The rationale in such case is that a police officer who is the source of the information is credible and reliable. But where another person and not a police officer is the source of the incriminating information, the officer who relays the information to an arresting officer is merely a conduit and the fact that he is a reliable person himself is not sufficient; it is the credibility and reliability of his informant that is involved and the State must establish it on the record. *Bolesta v. State, supra,* at 413. See *Bauckman v. State,* 9 Md. App. 612, and also *Price v. State,* 7 Md. App. 131 in which we discussed *Spinelli v. United States,* 393 U. S. 410 and *Aguilar v. Texas,* 378 U. S. 108. We have said that a confession by one person implicating another in a felony would furnish probable cause to arrest the person so implicated. *Boone v. State,* 2 Md. App. 80, 93; *Edwards v. State,* 7 Md. App. 108, 112, note 1. It seems that a confession voluntarily given is "reasonably trustworthy." And we have found evidence that a dog tracked and pointed suspected felons to be admissible on the issue of probable cause, the dog's reliability being shown by proof of his special training and experience. *Terrell v. State,* 3 Md. App. 340, 358-359.

Following the lead of the Court of Appeals we have made an exception to the general rule in the interest of public justice where information is given to a police officer by witnesses to a crime, at the scene of the crime and a few minutes after it has been committed. We said in *Knight v. State,* 7 Md. App. 282 that the standards of reliability of the witnesses are not the same as when the information is otherwise received from an informer. At 285. We cited *Taylor v. State,* 238 Md. 424 in which the

Court of Appeals held as "reasonably trustworthy information" a description of the criminal from an unidentified eyewitness and admitted it in determining the probable cause for an arrest for a felony. We quoted the Court observing in the circumstances there present that "it would be entirely impractical and unrealistic to require the officer to stop his investigation of the crime and inquire into the witness' trustworthiness." 238 Md. at 430. And in *Jones v. State*, 242 Md. 95 the Court recognized that the test of reliability of information received under some circumstances may be different from the criterion when there is time for the procuring of a search warrant. "When a crime of violence has been committed in the early morning hours, and the only chance of apprehending the suspected criminal seems to be a prompt apprehension of the car in which he was driving away, the investigating officer cannot be expected to take the time to ascertain and make notes of the names and backgrounds of all the persons at the scene who told him what they had observed. Our system of justice must be responsive, not only to the needs of individual liberty, but also to the rights of the community. *United States v. Ventresca*, 380 U. S. 102, 112 (1965)." At 101.

Appellant, arguing that the State did not establish probable cause for his arrest, relies on that part of the "reasonably trustworthy information rule" which deals with "the underlying circumstances from which the police concluded that the informant was credible or his information reliable." He says: "The officer had before him the bare accusation of an *unknown* complainant, of *unknown* reliability and no circumstantial evidence which tended to support it." [2] We feel that the circumstances here are within the exception to the general rule. The police officer was approached on the street and told by a person that he had just been robbed and that the felon

2. As set out *supra* there was direct evidence that the officer saw the car described by the complainant shortly after the crime was committed and near the scene of the crime proceeding in the direction the complainant indicated.

was escaping in a particularly described automobile in a specified direction. He could not be expected to take time to ascertain either the informant's credibility or the reliability of his information. Responsive to the needs of justice he set out with the informant to apprehend the alleged felon. Within minutes he saw the car described and the informant pointed out the robber seated in it. The officer arrested the man designated. We hold that the arrest was legal. Therefore, the search and seizure incident thereto were reasonable, and the court did not err in denying the motion to suppress. The challenged evidence was properly admitted.

Appellant argues that the State did not show that the revolver found was worn or carried concealed upon or about his person since it was found in the automobile. In *Corbin v. State,* 237 Md. 486, 491 the Court of Appeals held that "[i]n order to support the conviction of carrying or wearing a dangerous or deadly weapon, it was necessary that the State establish the fact that the accused was carrying the weapon or that it was in such proximity to him as would make it available for his immediate use." We applied this rule in *Shifflett v. State,* 3 Md. App. 550, in holding the evidence was sufficient to show a violation of the statute when a razor was not found on the arrestee's person but at the immediate and exact spot where he was apprehended. The lower court's judgment here that appellant was carrying a deadly weapon concealed about his person was not clearly erroneous. Maryland Rule 1086.

*Judgments affirmed.*